Good morning, your honors. My name is John Kaufman. I represent the appellant Kaleena Morales. Let me initially thank the court for allowing me to appear in your lovely city by the sea and argue this case. So how warm is it at home? Well, it's going to be 90 today and 92 tomorrow, so I'm very pleased to be here. Let me just start just a little bit with a procedural background because I think the procedural background is a little bit important in this case. We started with a transportation of undocumented alien case. My client's arrested. She's put in jail. There's a policy in the district to have depositions taken of the aliens. Depositions were taken of the aliens. It was kind of a heated procedure. Many objections, many constitutional objections. Those were denied. They went forward. We had a motion to suppress. The appellant lost the motion to suppress. And then we get to the mix of the action here is she's willing to plead guilty. And she tells the government and she tells the court that she's willing to plead guilty. But the District of Arizona, the U.S. Attorneys in the District of Arizona, has a policy that they don't permit conditional pleas. So there's a trial. It's a bench trial, right? A bench trial. The defendant, the appellant, is making every effort to try to cut whatever government time and expenses in order, honestly, to preserve her acceptance of responsibility. But what happens here, as in many cases, is that issues arise from the trial that go beyond the Fourth Amendment issue that she wanted to preserve. And that's why we have an evidentiary issue here and that's why we have a sentencing issue. What happens at trial is when the government starts to introduce the transcripts of the aliens, Ms. Morales gets up and heatedly objects, objects on hearsay, on Sixth Amendment, on confrontation, on foundational grounds, and the court kind of ignores those objections but says, you know, I don't really see any effort for you to subpoena or show unavailability of these undocumented aliens to testify. Well, see, you have the 826 form, right? Yes. So we're talking about the 826 form. And that's how we get to 826 is when she boots out the transcripts. So my question is if the 826 form probably is some sort of business record, but then we've got Melendez-Diaz and the hearsay within the hearsay. So would it be your position that some part of the 826 could probably come in as a business record, but not the hearsay within the hearsay? You can argue that, but that would not be the position of the appellate. First of all, we view it as a police report that is expressly excluded by 803. But the major problem for them is even if you get beyond that, that statement is the rule 901A and B, which they never get beyond. And then when you do that, then you have to decide whether portions of this particular document are testimonial or not testimonial in order to get to the confrontation issue of the case. To say that this is an administrative document and is non-testimonial is the ostrich defense by the government. They're sticking their heads in the sand. This document is prepared perhaps not for a criminal proceeding, but certainly for administrative proceedings in which they use this document to deport or to initiate the deportation proceedings for these undocumented aliens. It clearly has testimonial value toward those proceedings. So if you talk about testimonial value and the importance of the Melendez-Diaz cases versus Massachusetts, you're talking about they take this information to use it against the people that are giving it. So. And let me ask you about how does it figure into our analysis that you have Officer Wyckoff, who looks into the Department of Homeland Security data and finds that there's a problem with the fact that he's looking at the databases to establish the alienage fact, and you don't necessarily need the 826s? That's your saying itself, but that's also problematic. I know it's problematic, but was there an objection to that? Yes, absolutely. And has that appealed? The objection was in he looks at the database. Correct. What he testifies from the database is he sees no Homeland Security permission for these people to be in the country lawfully. And then he gives his opinion as to whether they are undocumented aliens. And that was objected to, and that's clearly outlined in the brief, that his opinion testimony was objected to. Whether it's a specific argument in the brief, it's not a specific argument. Well, the reason I'm asking that is it seems to me that forms an alternate basis for establishing aliens. It might well be hearsay, as you point out, but the question is if it wasn't objected to and it wasn't argued, doesn't that provide an alternate basis for that point? No. Okay, and why not? Simply because it may document that these people have not been authorized into the country, but where does it document that they're an alien? Where is it documented that they were born in Mexico unless it comes from the A file? Let me give you just another little background information. I'm asking you maybe a little bit different question, is doesn't his testimony, whether you like it or not, establish that these individuals are in this country illegally? No. It's a two-part question. First of all, are they aliens? And secondly, is there some kind of permission for them to come into the country legally? The data space can answer the second question, but it can't answer the first question. Okay. Someone else has to answer that first question. How could they be here illegally? I guess if they're a U.S. citizen, you can't be here illegally, right? They only get that from the A file. Right, but you just told me that you could establish that they're here illegally, you just can't establish that they're an alien. So I'm having a little trouble in my brain thinking, well, how else would they be here illegally? You're talking apples and oranges here. The database that he looks at says that Homeland Security hasn't allowed these people in the country legally. Has not? Has not. Okay. I mean, that's the only thing that it shows. It doesn't show that they're not United States citizens or where they were born. To get that, you have to get the A file. One just little quick little comment about the A file. Standard in my practice is when they do these depositions, I make a request for the A file, and that's document 12 of the court file. The government refused to give me the A file, and the district court magistrate, in this case Magistrate Guerin, who later became district court judge Zips, upheld that and refused to give me the A file. Now, this only comes up because the judge then refuses to allow the depositions in, and all of a sudden the A file becomes something strategic and important. And in fairness to Mr. DeJoe, who was the trial attorney at that time, he's all of a sudden saddled with, you know, how's he going to prove alienage? And the only way he can do it is to get the A file, which I was denied. Well, I guess do we have cases out there? You know, like we have sufficiency of the evidence cases out there, for example, like if you're talking about a bank robbery, what you have to show in terms of that, you know, it's that type, it's a federally insured, you know, type of, you know, bank type thing. Or we have, like we have some things going around in our court, if you're talking about you've got to prove someone's in a tribe or, you know, that sort of thing, the documents that you have to do to show that. Do we have, are there any cases on sufficiency of the evidence out there that say that what exactly has to be there in order to prove that element? Not that I've been able to find, and the government relies upon harmless error, which I think is an admission that they don't get 803, they don't get 901, and they have trouble with the confrontation clause. Let me go to the second argument, and I'm not going to spend much time on search and seizure because my experience with the Ninth Circuit is that rarely, that rarely comes to be, and it's kind of a legal issue. Well, what you should say is you briefed it. I briefed it. It's briefed it, and there's controlling law that we can't as a panel over here. Let me talk about the sentencing issue for a second. The sentencing issue is concerning the interpretation of 3E1.1, and the giving of the two points for acceptance of responsibility. What's going on here is the judge parrots the commentary. However, when she parrots the commentary and it goes to the effect of conduct and pretrial statements, she never gives what type of pretrial conduct or what type of statements would bar the not giving of the two points for acceptance of responsibility. There's no basis in her ruling anywhere except this reading and parroting of the commentary to the guideline. Ms. Morales did whatever she could to try to get acceptance of responsibility. She waived her jury trial. She told the government and the court that she will plead guilty. She stipulated to testimony from the suppression hearing. The trial lasted less than a half a day. There was a little trouble with the probation department, but at trial or at sentencing, and I included it in my brief, she clearly accepts responsibility, and the court acknowledges that acceptance of responsibility. The case is cited by the government, and anything that the government has cited in the past, when the court has refused to give the acceptance of responsibility, there is documentation, findings of fact by the district court that the Ninth Circuit has grabbed onto and said, you know, we find this reasonable. It's not an abuse of discretion because he's listed the factors in which he's    The court is going to give the acceptance of responsibility to the district court in order to do that. That did not occur here. What occurred here was simply a parroting of the statute. Time is short. If the court would permit me. Let me ask you this. Something in her pre-sentence interview, she expressed remorse, admitted to knowing that she would be paid for transporting the aliens, but denied knowing how much. She also denied having known that the aliens in question were illegal. At sentencing, however, she admitted to having knowledge of the aliens' illegal status. So that the dispute was we got a little tiff. And the judge made the findings of fact that she accepted Ms. Morales' position. So I don't really think the court can pay much attention to that because she accepted our finding, the findings that we gave her, and then she made the clear acceptance of responsibility before the court. With the court's permission, let me reserve my remaining time for remarks. All right. Thank you. Good morning, Your Honors. May it please the Court. My name is Ryan DiGioia. I represent the United States Attorney's Office for the District of Arizona. Let me start first with the acceptance of responsibility argument because that's where we left off with the sentence. Well, she wasn't overly troublesome. You know, you can't, I mean, those of us that have been in trial courts, I mean, you know, you usually have a jury trial and when you, you know, sometimes there's sort of the, you know, the slow plea, as it were. And it sounds like from what her counsel is saying that there were procedural moves that the government had made that made it hard for him as far as that goes. I mean, you know, it's a little bit in a trick box in the trial when, you know, things didn't start going your way. So is that really all the defendant's fault? I mean. It's not the defendant's fault. I don't know if fault is the right term. But in terms of what the intent of the defendant was to what actually transpired at trial, what transpired at trial is there were disputes as to every element. We're still here on the 826 form, which speaks to alienage. So when you look at the actual actions, not so much the intent of the defendant, is that the elements were all contested. And when you look at the application note that we cited, note 2 under 3E1.1, it is the exact scenario listed in that note as to why acceptance should not be given and where it should not be given. And I think to the kind of your office's position of not taking these conditional pleas put you right in this box, right? It did. It did. I mean, how easy would it be to just be able to come up here and get the legal issue resolved? We would never have the trial. Why does your office have that? I can't speak to that. I do not make that policy. I understand that. I know that some of the rationale is that for just on something like a probable cause standard, our office would like to seek, even though it sounds counterintuitive, more record to put kind of any issues regarding probable cause or reasonable suspicion into the context of a larger trial and other things that are going on. So you would like, you might want to have the trials. I mean, it's just kind of this paradox where you won't accept a conditional plea. Well, when you get into trial, the trial counsel has an obligation to take the trial seriously and can't just pretend like these issues aren't flying by and next thing you know, you're in. Otherwise, it's going to be ineffective assistance of counsel on his head. So once you're in trial, you're into the real deal. But then they turn around and say, well, she didn't really accept responsibility. She went through the whole trial. So something just doesn't sit quite right about it. But maybe it's all legal. You tell me. I would say it is all legal, because what happens at trial goes right into the note that we've cited, note 2. That's what happened at trial. What the intent was, what the buildup was, whether conditional pleas were taken is not something that's factored into the application note. It's very clear that when someone puts the government to its burden at trial, which is what happened for whatever reason and whatever procedural posturing happened before that, they're not entitled to acceptance of responsibility and that the court has to look at the pretrial statements and conduct of the defendant. And that's reviewed for abuse. Well, you hold all the cards here. That's the bottom line. Just because you can do something doesn't always make it right. But then it's a clear error standard, right? That's correct, Your Honor. And I would state that the trial was treated as a real trial. We do have real issues, just like a real trial does, and that's why we're here on appeal. Well, I think the issues on the form are pretty substantial. So do you maybe want to go to that? Absolutely. I think when you look at the admission of the Border Patrol form, the reason we put harmless error first is to shed light on all the other evidence that was submitted at trial that proves alienage and proves the alienage. Well, what exactly – okay. The element that we're – that we're going to, what is the element of the crime that you actually have to prove here that this is relevant to? The element is that the defendant is an alien, meaning he's an – I'm sorry, not the defendant. The people. The material witnesses. I'm sorry. The aliens that were transported. That they are aliens, that they're not natural-born or naturalized citizens of the United States. So what is the case law in terms of restrictions on what evidence – what's the floor on proving an alien? I mean – If you're looking for a floor – Because obviously if you leave out an element of an offense after a trial, you lose on insufficiency of the evidence. You don't get another bite of the apple, right? That's correct. And the only floor I can possibly think of is more in the context as we see it in illegal reentry cases where there is Ninth Circuit law that after a guilty verdict that this Court stated that something isolated like one warrant of removal alone is insufficient to prove alienage. There has to be a little bit more than that. That's the only floor I can really think of. So other than this form, if the form's not admissible, what evidence is there in the record? The database is checked by Agent Wyckoff, and there are – and he elaborated on what some of those were and what they track and the fact that they're based on someone's fingerprint. So what the form is, is – So what does the database – what does the database evidence show? Because I think counsel for the appellant said, well, it showed one thing, but it didn't show another thing. Right. I would argue that's not apples and oranges. The defense counsel stated he – they are part and parcel of the same question. So what the databases show based on that individual person's fingerprint is their immigration history as well as their legal status. And what those documents show is that the person does not have permission to be in the United States. And the reason they do not have permission to be in the United States is because they are not a natural-born or naturalized citizen of the United States. And then he says, well, that's just hearsay. You've just got an officer looking at it and then testifying to it. It's not hearsay. Well, it has been admitted under the business records exceptions. When the particular case that we put on the record and regarding what's known as the claims database, which was a case that this Court decided in 2010, that the claims database and the information on the claims database was admissible and it was admissible without having to go solicit an expert opinion on how it works, just that the person who was testifying knew how to access the system and can testify about it. That case, I'll take a look at real quick my notes. Sorry, I don't have it in this note. I believe it's Diaz-Lopez. It's a 2010 case. It is cited in the record. How does that fit with Peña Gutierrez when they talk about not having certain reports be admissible because of this inherent hearsay within the reports, so that you can't have somebody just testify about it? I think that goes into the next argument I was going to make here about the nature of the document itself. And in our brief, we likened it to the warrant of removal, which this Court has repeatedly held to be admissible under the business records exception or the public records exception. We're talking about the 826 now, not about the database? Yes, I believe we shifted to that. Okay, just getting back to the database for a moment. Is there a hearsay issue with the database? No. The hearsay issue is not with the database because the agent can just check the database himself. He testified that he has access to these databases in his role as a prosecution's agent, that when he accessed the databases, the results come back, that these people do not have permission to be in the United States because they are not natural-born or naturalized citizens. And there's a few databases that were referenced. One is known as ERMS, the Enforce Alien Removal Module, CIS, which is the Central Index System, as well as E3, which is a compilation that Border Patrol uses of a couple databases to track a person's immigration history and their status in the United States. And there's no hearsay within hearsay issue with those databases? That's just the report of the agency and compilation of information? That's correct. That's the business record itself. And, again, that's why I liken that to the case from this Court in 2010 regarding the claims database. It's really the database is very similar to that one, which this Court upheld as  the printouts from the database or an expert that shows how it works, just that the person testifying knows how to access the database and can speak intelligently about what is contained on the database. Okay. So then moving to the I-826, and I guess the question I have is, even if the form itself is admissible under an exception, what about the admission in there by the alien? How would that be admissible? Because we do have the hearsay within hearsay cases. I actually think Judge Callahan made the point there when speaking to defense counsel about some portions of the form being admissible where other portions would not be. I think you argued for the whole thing. I didn't. I'm not necessarily arguing for the whole thing. I think the top part is relevant, being that it's biographical information as to where the person is born and when and where they are found in the United States. And that's really where it parallels. Right. But I thought that that form includes some statements by the aliens as well, which would be hearsay. It does, toward the bottom where they state, and it's actually listed in Spanish for the initial, that they are in the country illegally and they wish to be returned to their country. Are you talking about the notice? So I'm looking at three boxes. I'm looking at the English version. The first box just doesn't require anything. It's just a notice of rights. The second box is where they're actually initialing it. And then there's a certification of service at the bottom. So what are you saying provides information about the alien status of the individual? The very top of the form where they state, and this is based on the interview conducted in the field by the Border Patrol agent on scene who actually spoke to them on the side of Interstate 10 about where they're from, what country they were born. And then there are markings there as to try and ascertain when and where they entered the United States. And then there's a box as to the particular grid locations of when and where they are found by Border Patrol. Well, why isn't that hearsay, though? Well, it is hearsay, but I would argue that it still falls under the exception, just like a warrant of removal does. Because, as stated in the Bahena-Cardenas case from this Court in 2005, and citing a case, Hernandez, United States versus Hernandez-Rojas, also in this Court, that the warrant of removal was found to be a ministerial objective observation which has inherent reliability because of the government's need to keep accurate records of the movement of aliens. And that's what this form is. It's called a field processing form. And it's in small type. But, again, this is just kind of the flip side of the coin of the warrant of removal. The warrant of removal is used by the Immigration Service to track when someone is deported from the United States. This is a form that Border Patrol specifically uses to document encounters for administrative purposes. It's a little bit different, though. If the form is simply a warrant of removal, it's sort of like saying a car drove over the border. But the format issue here, you have to know, you know, why did the car drive over the border? Why was there a warrant of removal? Well, it's because you had an undocumented alien. So that's where you get into the double hearsay problem, it seems to me, that's different than the warrant. Do you see the distinction there? I do see the distinction. And, you know, the warrant does not include any statements or attestations by the alien as well. So I understand that. But I think even the hearsay within hearsay can fall under that exception for business records because it is the type of record that the United States Immigration Service keeps in an administrative basis. There's a larger difference. Okay. So you have the top part, which you're saying is one level, but then the statements that are more characteristically a statement, you're saying that's another part that's more problematic under Melendez-Diaz? I think there's more analysis on that portion of the document depending on when it's used. If you have a defendant who's being charged with illegal entry and then you're trying to get that in as a statement to the defendant, obviously it's going to be part of a different context subject to possible Miranda custody issues, things of that nature. Well, the district court found that you didn't have an adequate showing of unavailability. And what's the significance of that analysis? For the purposes of this hearing, I'd argue that there's really no significance for that. It was just something that was not done procedurally. There was no bar to the material witness testimony because of anything that was said or anything that was documented. It was just that there was an inadequate showing of unavailability. So when you were trying on the unavailability, if you had satisfied that, would you have put in some cross-examined depositions or what would you or were you just or were you offering was that discussion relevant to the statements that they made for a declaration against penal interest? Or what was the unavailability discussion for? The unavailability discussion is part of a decision of this Court to show that the witnesses are unavailable and that steps were taken to try and procure their actual live testimony. And once that's satisfied, the deposition is played where the material witnesses state that they don't have status, that they're born from another country, and about how and where they got to the point where they were encountered by Border Patrol. So the depositions are separate than the form? The depositions are separate from the form. And you didn't introduce the depositions because you couldn't show unavailability? That's correct. And I think when you go back to the form, too, there's a difference between this Form 826 and a police form or a police report. Border Patrol has different forms for that. As we noted in our brief, they have what's called a G-166, which is an arrest report just as a police report is. All right. Really quickly, though, if under the harmless error analysis, if this were not admitted as a business record, you have the other record of where the officer checks the database. What other evidence do you have? There's the stop, and they're kind of hiding. What's the other evidence on that issue? That is evidence. The manner in which they're being transported, the manner in which they're found in the vehicle. And what did that other witness say that was with? There was another witness that testified, right? The co-defendant testified. She stated that the defendant told her that she would give the cooperating defendant and the testifying defendant money if she helped the defendant transport illegal aliens for money. There's that testimony. The court, in citing its reasons for the decision, stated that based on all the testimony of the agents and the case agent, along with some of the documents that were presented, was sufficient to satisfy the alienage prong. And there was other evidence of that, including, as the court noted, the Border Patrol agent on scene testifying that he ascertained the citizenship of all the aliens, separate from the form, as well as the co-defendant's testimony, as we stated, and the databases checked by Agent Wyckoff as the case agent. Okay. But those are hearsay statements. So under what exception did they come in, the officer talking to the aliens that aren't there? I think they came in because they were not, I don't recall them being objected to. But it wasn't a question of what the alien statements were. It's that the question to the agent was that, were you able to ascertain the citizenship of the people inside the vehicle? And he said he was able to do that and that they did not have status in the United States, based on that initial check, which then necessitates the form documenting when and where those people were born, when and where they were encountered in the United States. And then that leads into just supplementing the records check that are fingerprint-based. Because, again, anyone can say anything for the purposes of filling out a form. It's once they're taken back for processing and their fingerprint is ran that the records that are maintained under that person's unique fingerprint are really checked to determine whether they have status in the United States and whether they are a natural-born or naturalized citizen. Thank you. Thank you, Your Honor. 137 is all I have. Let me just quickly address something that Judge Callahan indicated. You mentioned that you thought that the sentencing issue standard here was clear error. That's not correct. It's only clear error if she would have made findings of facts, fact. She made no findings of fact. She just parroted the statute. And as a result, I think it's an abuse of discretion or a de novo review, nothing that is prohibiting the panel from checking the record and seeing if there are any facts that would support the reasonableness of her decision. But clearly not or I don't believe that clear error is the standard when no facts are actually put on the record by the judge. Secondly, the suggestion that a warrant for removal is the equivalent of this I-826 form is also not supported by the record. This form is completed in the field by the arresting officer in order to ---- Did I misunderstand his argument? I thought he was talking the warrant of removal was equivalent to that database check. No. I think he's telling you that the I-826, if you take a look at his argument in his brief, tells you that the form can be admitted because it's non-testimonial and therefore defeats the testimonial aspect of the Sixth Amendment challenge as opposed to the business record and authenticity challenge that we raised. What about that database check? How is that in your mind? How do you designate that relative to the I-826? The database is, first of all, no documents were produced. It's hearsay. It's hearsay upon hearsay. And what he basically says at trial is he checks the database, then we make the hearsay objections. The court sustains the hearsay objections and says, ask it in form of an opinion. Then he gives, again, over our objections, an opinion testimony or an opinion about alienage based upon his review of these databases. I think what I heard the government saying was that in their view that the databases are like the warrant. I mean, that's what I think I heard them saying. Now, that may or may not be true, but that's what their position was, that it's like the Melendez-Diaz setup. Or that it's like a public record just setting out the office's activities, that they were talking about the public records exception. I think they're, if you take a look at their brief, they're talking about the form and not the database. Okay. Okay. Thank you.  All right. Thank you. Any other questions? I think that's your argument. They're a very interesting and difficult case, so I'd like to thank you both for your argument. Thank you for having me. Let me just make one little comment not related to the case. All right. I started practicing in 1975, and my first case before the Ninth Circuit was in 1977. And the first thing I noticed when the honorable judges came into the courtroom was there were three women on this panel. I don't know if I've seen that in my 38 years of practice. It was pleasing to see and certainly a lot easier to look at than some of the other panels that I've faced. And we have more questions, too. Yeah. Thank you. Thank you. United States v. Morales is submitted.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: McKeown, Callahan, Ikuta